# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY BUTLER, as Administrator of the Estate of Aleshia Butler, the decedent, : : : : Plaintiff : : v. : : MOUNTAIN VIEW : SCHOOL DISTRICT, : : Defendant : | CIVIL ACTION NO. 3:12-CV-2038 (JUDGE MANNION)[1] |

## MEMORANDUM

Pending before the court is the defendant's motion to dismiss. (Doc. No. 8). Based upon the court's review of the motion and the materials related thereto, the motion to dismiss will be **GRANTED** as noted below.

## I. BACKGROUND

During the 2010-2011 school year, the decedent was a ninth grade special education student in the Mountain View School District. (Doc. No. 1 at ¶¶6,15). On October 10, 2010, the decedent committed suicide. (Id. at ¶7). According to the complaint, three weeks prior to her death, the decedent

---

[1] The instant action was originally assigned to the Honorable A. Richard Caputo. Pursuant to the verbal order dated January 7, 2013, the matter was reassigned to the undersigned.

complained to employees of the Mountain View School District, particularly Mr. Michael Beamish, that she was being bullied by another student. (Id. at ¶¶ 8-9). The bullying was reported to the principal in charge of the school, Principal Doster. (Id. at ¶10). The decedent was allegedly the victim of bullying by a fellow female student who was a former friend of the decedent. (Id. at ¶11). During this time, the decedent also allegedly performed lower than expected in both her math and reading grades. (Id. at ¶18).

Additionally, at some point prior to the decedent's death, the decedent allegedly confided in a Mountain View teacher named Melissa Berish, though it is unclear exactly what Ms. Berish may have been told regarding the alleged bullying. (Id. at ¶13). The plaintiff also claims that the Mountain View School District was aware of a history of depression in the decedent's family, as the school had previously notified the decedent's family of suicidal ideations of the decedent's older brother. (Id. at ¶14).

The plaintiff filed the present complaint on behalf of the decedent in the Middle District of Pennsylvania on October 10, 2012. (Doc. No. 1). Count 1 of the Complaint alleges a violation of the Individuals with Disabilities Education Action, 20 U.S.C. §1400, *et seq.* (hereinafter "IDEA"). Count 2 alleges a violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.* (hereinafter "Title IX"). Count 3 alleges a violation of §504 of the Federal Rehabilitation Act, 29 U.S.C. §701 (hereinafter the "Rehabilitation

Act"). Counts 4 and 5 allege wrongful death and survival actions respectively.

On December 14, 2012, the defendant filed the present motion to dismiss all of the plaintiff's claims. (Doc. No. 8). On December 28, 2012, the defendant also filed a brief in support of the motion to dismiss, claiming generally that the plaintiff's admitted failure to exhaust administrative remedies under the IDEA should not be excused, that the plaintiff did not ask for appropriate remedies under the IDEA, and, alternatively, that the plaintiff had failed to state a claim with respect to each count of his complaint. (Doc. No. 9). On January 21, 2013, the plaintiff filed a brief in opposition to the defendant's motion to dismiss counts 1, 2 and 3, but agreeing to the dismissal of Counts 4 and 5 of the complaint. (Doc. No. 12).

**II. STANDARD OF REVIEW**

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l

4

Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

**III. DISCUSSION**

In the complaint, the plaintiff alleged violations of the IDEA, Title IX, and the Rehabilitation Act in addition to the wrongful death and survival action that the plaintiff now concedes must be dismissed.[2] The plaintiff claims that the defendant violated the IDEA by "failing to identify, evaluate and provide the decedent with a free appropriate public education" and failing to implement the decedent's Individualized Educational Program (IEP). (Doc. No. 1 at ¶20, 23).

---

[2] In light of the concession to dismissal of Counts 4 and 5, the court will not address those issues.

Regarding Title IX, the plaintiff asserts that the defendant failed to appropriately investigate and stop the gender-based discrimination allegedly suffered by the decedent prior to her death. (Doc. No. 1 at ¶34). Finally, the plaintiff claims that the defendant violated the Rehabilitation Act by allegedly discriminating against the decedent because of her disability in failing to provide her with the same protection from bullying that all other students were provided. (Doc. No. 1 at ¶39).

### A. IDEA Claim

The plaintiff alleges that the defendant violated the IDEA when it failed to properly accommodate the decedent's disability and caused the decedent's education to suffer. As a result, the plaintiff argues that it is entitled to the "value of compensatory education." (Doc. No. 1 at ¶26). The defendant, however, argues that the plaintiff has failed to state a claim under the IDEA since the minor child is deceased and there are no available remedies under the IDEA. (Doc. No. 9 at 2). The defendant also argues that the plaintiff has failed to demonstrate why its admitted failure to exhaust administrative remedies should be excused. (Doc. No. 9 at 5). The court finds that the plaintiff has failed to exhaust administrative remedies, however to require exhaustion now, under the unique circumstances of this case, would be futile. Additionally, the court finds that the remedies requested by the plaintiff are not available under the IDEA. As such, the IDEA claim will be dismissed.

*i. Purpose and History of the IDEA*

In 1970, Congress enacted the Education of the Handicapped Act, later renamed as the IDEA, to assure that all children with disabilities have available to them a free appropriate public education. The IDEA emphasizes special education and related services designed to meet their unique needs. The central purpose of the IDEA is to ensure that children with disabilities have a free appropriate public education (FAPE). 20 U.S.C. §1400(d). The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that ... [a] free appropriate public education is available to all children with disabilities...." 20 U.S.C. §1412(a)(1)(A); Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004).

A FAPE "consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." W.B. v. Matula, 67 F.3d 484, 491 (3d Cir.1995) abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)).

The "primary vehicle" for implementing a FAPE is the Individualized Educational Program (IEP). "The IEP consists of a detailed written statement

7

arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir.1988) (citing 30 C.F.R. §300.347), cert. denied, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). Melissa S. v. School Dist. of Pittsburgh, 183 Fed.Appx. 184, 186-87 (3d Cir. 2006).

To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit. Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 349 (5th Cir. 2000). Flexibility to implement an IEP is maintained, yet the school district is accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000) (citing Rowley, 458 U.S. at 188-89, 102 S.Ct. 3034). Melissa S., 183 Fed.Appx. at 187.

*ii. Exhaustion*

Before a plaintiff can bring a claim in federal court for an IDEA violation, however, they must exhaust their administrative remedies. This generally includes a local due process hearing and an appeal to the state educational agency. 20 U.S.C. §1415(f). Any party dissatisfied with the state administrative

8

hearing may bring a civil action in state or federal court, in which the court must conduct an independent review based upon the preponderance of the evidence, while giving "due weight" to the state administrative findings. Polk, 853 F.2d at 173 (citing Rowley, 458 U.S. at 206-07, 102 S.Ct. 3034).

The IDEA's exhaustion requirement applies to all claims for relief available under the IDEA, even if a claim arises under a different cause of action. Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 281 (3d Cir.1996). That is to say, a plaintiff may not avoid the exhaustion requirement by alleging an IDEA violation as a §1983 claim predicated upon the IDEA.

The plaintiff concedes that he did not satisfy the IDEA's exhaustion requirements. (Doc. No. 1 at ¶27). The plaintiff argues, however, that this failure to exhaust is excused under a recognized exception to the exhaustion doctrine.

According to the Third Circuit Court of Appeals, exhaustion under the IDEA is excused when resort to such procedures would be "futile or inadequate." Matula, 67 F.3d at 495; *see also* Honig, 484 U.S. at 327, 108 S.Ct. 592 (recognizing "futile or inadequate" exception to exhaustion requirement). Where plaintiffs seek application of this exception, it is their burden to prove the futility or inadequacy of the administrative proceeding. Honig, 484 U.S. at 327, 108 S.Ct. 592. The Third Circuit excusing failure to exhaust based on the futility exception, has held that "where the relief sought

in a civil action is not available in IDEA administrative proceedings, recourse to such proceedings would be futile and the exhaustion requirement is excused." Matula, 67 F.3d at 496 (citing Gilhool, 916 F.2d at 870); accord McCachren v. Blacklick Valley Sch. Dist., 217 F.Supp.2d. 594, 597 (W.D.Pa. 2002) (holding that the exhaustion requirement is limited to actions seeking relief that is "also available" under the IDEA).

In reaching this conclusion, the Third Circuit looked first to the language of the statute itself. The IDEA states that "before the filing of a civil action under such laws ... seeking relief that is also available under this subchapter, the procedures under subsection (f) and (g) of this section shall be exhausted...." 20 U.S.C. §1415( I ); Matula, 67 F.3d at 495. Recognizing that damages may be available from a court, but not under the IDEA administrative procedures, the Matula court then concluded that "by its plain terms [this section] does not require exhaustion where the relief sought is unavailable in an administrative proceeding." Matula, 67 F.3d at 495. The Matula court reviewed the legislative history, and found compelling support for applying this exception for failure to exhaust IDEA administrative procedures when they do not offer the remedy a party seeks. Id. In Matula, the plaintiffs were seeking specific compensatory damages for private school tuition costs, therapy costs, and medical evaluations. Id.

The plaintiff in the instant case alleges that it seeks remedies not

10

available at the administrative level, and therefore should be excused from the exhaustion requirement. Under the unique circumstances of this case, the court agrees. The plaintiff seeks the "value of compensatory education" a remedy that is not available at the administrative level, nor as explained below, available in this court proceeding under the IDEA either. (Doc. No. 1 ¶26). While the district court is authorized to grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education, such relief does not apply here. A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 802 (3d Cir. 2007). In Shadie v. Forte, this court held that there are three types of compensatory relief possibly available in IDEA claims: first, compensatory relief in the form of an order directing the parties to provide educational services; second, tort-based compensatory damages for physical and emotional injuries and; third, monetary damages to reimburse prior tuition expenditures. Shadie v. Forte and Hazleton Area School District, 2013 WL 1729368, *7-8 (M.D.Pa. Apr. 22, 2013). In this matter, the allegedly affected child is deceased, therefore, there is no court order for compensatory education that could issue. The plaintiff has also raised no claim for tuition reimbursement, nor do the facts allege that the decedent was ever removed from the district's school system.

While the Third Circuit has not definitively addressed the availability of

tort-like compensatory damages in IDEA cases, this court adopt the reasoning of the majority of Courts of Appeals in finding that tort-like compensatory damages are not available. See C.J.G. v. Scranton School Dist., 2007 WL 4269816, (M.D.Pa. Dec. 3, 2007)(comparing holdings of the Courts of Appeals). Unlike the plaintiffs in Matula and Shadie, who alleged out-of-pocket costs related to the underlying IDEA violations, the plaintiff here has made no such claim. Since the plaintiff has only requested "fair value of compensatory education", and, as discussed above, has not asserted that he ever paid for alternative education or any other support services, this court is unable to award compensatory damages in the absence of specific out-of-pocket costs directly relating to the defendant's alleged IDEA violations. (Doc. No. 1 at ¶26).

Ultimately, this matter is predicated upon a fact pattern that alleges the presence of bullying by another student/former friend of the decedent, not on a failure to implement an IEP. An action under the IDEA is a mechanism to ensure that disabled students receive an appropriate education, not a means for an individual to address collateral torts such as bullying. In conclusion, the plaintiff has failed to raise a claim for damages available from this court, and commensurately fails to state a claim upon which relief can be granted. Count 1 of the complaint must therefore be dismissed.

**B. Title IX Claim**

Title IX provides, relevantly, that "[n]o person in the United States shall,

on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance...." 20 U.S.C. §1681(a). The United States Supreme Court has held that Title IX encompasses sexual harassment of a student and is enforceable through an implied right of action for money damages against the school district. *See* Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992).

As the plaintiff correctly asserts, in order to establish a Title IX claim against a school district, the plaintiff must show that: (1) the school district received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under both circumstances where the school district exercised substantial control over both the harasser and the context in which the harassment occurred; (4) the school district had actual knowledge of the harassment; (5) the school district was deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it deprived the victim of access to educational opportunities or benefits provided by the school. *See* Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999).

In this matter, it appears both clear and undisputed that Mountain View School District received federal funding. (Doc. No. 1 at ¶38). The court will therefore focus on the next five factors.

13

The first question is whether sexual harassment occurred. Sexual harassment must be both viewed subjectively as harassing by the victim and be objectively severe or pervasive enough that a reasonable person would agree that it is harassment. Saxe v. State College Area Sch. Dist., 240 F.3d 200, 205 (3d Cir. 2001). Since the courts must bear in mind that children may regularly act in a manner which would be unacceptable in the adult workplace, mere gender-based taunting does not rise to the level of sexual harassment. Davis, 526 U.S. at 651-652 affirmed by J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 931 (3d Cir. 2011) cert. denied, 132 S. Ct. 1097, 181 L. Ed. 2d 978 (U.S. 2012). Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. Davis, 526, U.S. at 651. The plaintiff in Davis, for example, was repeatedly subjected to vulgar comments, unwelcome physical contact, and sexually suggestive actions for close to a six month period. *See* Davis, 526 U.S. at 634-635.

In this matter, the decedent was allegedly bullied by one other female student, her former friend, during the weeks prior to her death. (Doc. No. 1 at ¶11). The plaintiff further alleges that this bullying amounted to "gender-based

14

harassment." (i.e. sexual harassment)(Id. at ¶33).

While it is true that the plaintiff does not need to provide detailed factual support for its allegations for the purposes of a motion to dismiss, the plaintiff's allegations must amount to more than mere conclusory allegations. Unlike the plaintiff in Davis, who supported her allegation with specific comments, actions, and events, the plaintiff here has failed to allege any evidence beyond labeling the alleged "bullying" as "gender based harassment." The unsupported allegations of bullying by one other female student, presumably of close to the same age as the female decedent, does not, on its face, suffice to allege a sexual harassment claim as a matter of law against the School District. The plaintiff has therefore failed to properly allege the existence of sexual harassment, and as such the Title IX claim as pleaded, fails. Although the failure of a single element is sufficient for the claim to fail, the court also finds that the plaintiff's Title IX claim fails under other elements as well. The plaintiff, for example, has also failed to satisfy the actual knowledge and deliberate indifference requirements.

The actual knowledge and deliberate indifference requirements are closely intertwined. It is clear that there must be both actual notice of the sexual harassment itself, not merely other bullying or teasing[3]. The school

---

[3]The plaintiff seems to equate "bullying" and "gender-based harassment" as interchangeable verbiage. They are not. Gender-based or

district must then also display deliberate indifference to that sexual harassment. Davis, 526 U.S. at 642 (*citing* Pennhurst State School and Hospital v. Halderman, 451 U.S. 1,17 (1981)). The school district may also only be liable in damages where their own deliberate indifference to this actual knowledge effectively causes the discrimination. Davis, 526 U.S. at 642-643 (citing Gebsner v. Lago Vista Independent School Dist., 524 U.S. 274,291 (1989)). This "high standard" seeks to eliminate any risk that the recipient would be liable in damages not for its own official decision but instead for another individual's independent actions. Davis, 526 U.S. at 643 (*citing* Gebser, 524 U.S., at 290-291). Ultimately, a school district is required to respond to sexual harassment in a manner that is not "clearly unreasonable." Davis, 526 U.S. at 649.

As opined by the Supreme Court in Davis, for example, the core principals of Title IX may be violated when teachers knowingly allow male students to prevent female students from using a computer lab, or a similar resource. Davis, 526 U.S. at 652. While a physical deprivation of school resources is not necessary, there must be an explicit willingness by the school officials to allow the gender based discrimination to continue. *See* Id.

---

sexual harassment require a component directly related to one's gender. Bullying, on the other hand, is a more generic term for abuse or intimidation, but has no required relationship to one's gender.

In this matter, given the plaintiff's failure to allege a Title IX violation beyond a conclusory allegation of gender based harassment, it is impossible to determine that the school's actions were "clearly unreasonable" in light of what school officials knew. Though the plaintiff does allege that no action was taken by the defendant to investigate or stop the bullying, there is no allegation that they could have, but deliberately chose not to stop the bullying in order to meet the deliberate indifference standard.

As pleaded, it appears that the plaintiff has failed to properly allege a violation of Title IX in Count 2. Frankly, the allegations associated with bullying by a fellow student of the same gender, who was a former friend of the decedent, appear to be so attenuated to Title IX liability against the School District as to be unsustainable in their present form. However, following Third Circuit precedent, the plaintiff will be allowed an opportunity to file an amended complaint if he can set forth good faith allegations designed to address the elements of a viable Title IX claim.

**C. Rehabilitation Act Claim**

In order to establish liability for a violation of §504 of the Rehabilitation Act, "a plaintiff must prove that (1) [the individual] is 'disabled' as defined by the Act; (2) [the individual] is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [the individual] was excluded from participation in, denied

the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,172 F.3d 238, 253 (3d Cir.1999) (citing W.B. v. Matula, 67 F.3d 484, 492 (3d Cir.1995), abrogated on other grounds by A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 803–04 (3d Cir. 2007)). In addition, to prove a violation under §504 "[t]he plaintiff must also demonstrate that the defendant knew or should have reasonably been expected to know of her disability. However, to establish liability, a plaintiff need not prove that defendant['s] discrimination was intentional." Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 827 F. Supp. 2d 409, 417 (E.D. Pa. 2011).

To obtain compensatory monetary damages, however, "the overwhelming majority of circuit courts and the district courts within the Third Circuit ... require a plaintiff to prove intentional discrimination in order to be entitled to the remedy of compensatory damages under ... §504." Shadie, 2013 WL 1729368 at *5 (*citing* Chambers, 827 F. Supp. 2d. at 425). The court similarly agrees that a showing of intentional discrimination is required to unlock the remedy of compensatory damages.

In this matter, the plaintiff has failed to successfully allege intentional discrimination. As discussed above, it is clear and undisputed that the decedent was disabled, was otherwise qualified to participate in school activities, and that the school receives federal funding. The plaintiff alleges that the school district failed to provide the decedent with the same protection as

all other students by failing to protect her from bullying. However, no facts put forth in the complaint suggest that even if the school did fail to protect the decedent from bullying, their failure was predicated upon an intent to single out one particular disabled student.

Nevertheless, following Third Circuit precedent, the court will allow the plaintiff an opportunity to file an amended complaint with regard to the Rehabilitation Act claim as well. Should an amended claim seek compensatory money damages, it must clearly allege that school officials intentionally discriminated against the decedent because of her disability.

## IV. CONCLUSION

The harm that "bullying" has caused to innocent children has seemingly reached an epidemic level. While bullying is not a new development, the harshness and vitriol associated with bullying has seemingly exploded in the digital age. Despite the plaintiff's desire to hold an overburdened public educational system accountable, the facts and law do not demonstrate an appropriate cause of action for a denial of rights afforded by the IDEA, and therefore Count 1 of the plaintiff's complaint will be dismissed. Finding that the plaintiff has failed to sufficiently plead violations of Title IX or the Rehabilitation Act, Counts 2 and 3 of the complaint will be dismissed, without prejudice to the plaintiff's opportunity to file an amended complaint as noted above. Counsel

is reminded that there must be a good faith basis for such allegations. (See, Fed. R. Civ. P 11.) Finally, as the plaintiff does not oppose the defendant's motion to dismiss with respect to the claims for wrongful death and a survival action, Counts 4 and 5 will be dismissed. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 26, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-2038-01.wpd